My name is Edward White and I'm presenting the argument on behalf of all the defendants in this case, Your Honor. When the en banc court looked at this case, it recognized that the Supreme Court had not given a definition at that time of what a true threat was. And that this case was a case of first impression with regard to what's the meaning of a threat within face. The concern was understandable because this case rises and falls on whether there was a threat made. Face counts depend on threat. The RICO counts depend on threat. The Supreme Court, subsequent to the en banc opinion here, while this case was pending in the various appellate courts, came forth with the new definition of what is a true threat. This definition has been adopted by this court recently, about six weeks ago, unanimously in United States v. Casal. And my understanding is the time for the petition for re-hearing in that case has passed and no petition for re-hearing has been filed. How do you spell it? Casal. C-A-S-S-E-L. And the citation is 408 F. 3rd 622. I believe it came out in May. We filed a supplemental authority letter in that case, Your Honor. Now the definition of a true threat is a statement by which the speaker means to communicate the speaker's intention to commit violence, either by the speaker or at his direction. So as the court noted, this court noticed in Casal that the former definition of a true threat in this circuit and other circuits, a reasonable foreseeability standard which was presented to the jury in our case. How do you get around the law of the case and the finality of the previous decision? You've read the decisions. You know what each of us thought. You know that my view was that reversal was required of the case and the majority view of the en banc was to the contrary. It looks like the en banc court decided everything except for remanding the punitives. How can we get to anything but the punitives? This case, as plaintiffs acknowledged when we were asking for a stay to go to the Supreme Court, there's no final judgment in this case because this court vacated the punitive damages and sent it back to the district court. The punitive damages is the lion's share of this case. While this case was pending, you have intervening Supreme Court cases. Did we send nothing back but the punitives? Correct. Is that the only part of the judgment we vacated or was the whole judgment vacated? The judgment, the liability aspect was affirmed. The vacation came with regard to the punitive damages. As to the amount of the punitive damages and the issue of whether the amount transgressed constitutional limits. Correct. In light of the Exxon Valdez case and subsequent to this court's decision, you had three intervening Supreme Court cases, State Farm, which deals with punitive damages, Virginia v. Black, true threats, and Shidler, which deals with the RICO counts here. So this case is still an open case. It's still pending, and that's when we went back to the district court. We said, Your Honor, the law has changed. Let me focus more on this. It looks to me as though the plaintiffs won the case on RICO on a theory that Shidler says is wrong. They just plain were not entitled to win. Unfortunately for your side, they won and got their victory affirmed on appeal before Shidler came down. And what I'm wondering is how do we do anything about that? How can we do anything about it? Because it was all decided, appealed, and affirmed before Shidler came down. But while this case was still pending, Your Honor, and even if you want to While some part of this case was still pending. Part of this case. But the question is whether there's a final judgment in this case. There isn't, as plaintiffs acknowledge. And even if there were a final judgment, the law of the case is a discretionary rule for this court. You can apply it, as you've done in other cases, if there's manifest injustice, changed circumstances, intervening, controlling law. How about the law of the mandate? The law of the mandate. Where the Supreme Court has said that once the mandate's issued, it's over. We only take up things that happen after that. We don't look at issues before the mandate. But the mandate, when the mandate issued and went back to the district court, Your Honor, the district court, even under the law of the mandate, could have exercised discretion in looking at matters that we presented back on this intervening law. I think not, where it's given an expressed limited mandate to discuss only the amount of punitive. But these were also on issues, Your Honor, that had not been ruled or excluded by this court when it heard the case on the en banc decision. I mean, you have a situation here where people have been hit with more than $100 million in damages on speech that six judges of this court, 12 judges, have heard this case. Six judges have said it's protected speech. Six judges have said it's not protected speech. And you're here with a serious chance to convince us that $100 million is absurd. And, you know, you can use your time any way you want to. But at least for me, I'd like to hear you on the issue that we remanded on. Well, it's – well, what I'd like this court, then, if I'm sensing what I am, to look at this case, and I will discuss the punitive damages, Your Honor, is if you're saying that there's what could be a partial judgment here that binds this court to the exclusion of Supreme Court precedent, which clearly is in our favor. The RICO counts should be tossed as $11 million right there. Yeah, that's – but that's not – that's not the punitive damage award which it catches to face. Well, I understand that. But then even with the face, the definition of what is a true threat, the jury here was specifically told not to consider subjective intent, which is contrary to the law of this circuit. Now, RICO, I think you're saying don't base punitives on the RICO amount. That's still open. Okay. Don't – is that what you're saying? Well, there is some confusion here of what the jury did, but as far as how much they punished these people, whether they were racketeers, and that added to the amount of punitive damages. But what I'm saying is that in light of the law of the land, the RICO counts should not even be there anymore. That's why that's important. I will get to the punitive, Your Honor. This is so – I think we fully understand your argument. Okay. And we agree with you about what Shidler says. Okay. So you don't need to convince us about that. All right. Okay. It's a matter of – all I can say then is that it comes down to if you're going to say there's a final judgment here, we still have discretion under the law of this circuit to look at this intervening law and to apply it and to give the proper relief to the defendants here with regard to punitive damages. The main thing was when the district court had the case, he said, okay, I'm just going to look at punitive damages. The plaintiffs asked for individual findings made to the defendants. The district court acknowledged that he was supposed to make individual findings as far as their reprehensibility. He didn't do that. He just did an engrossed view that these people are recidivists in the worst order without showing how each person qualifies for the amount of punitive damages that were struck by the jury upon this person. Well, the district court obviously relied upon its prior order, which was extremely comprehensive and detailed with respect to each individual defendant's involvement. What more was it supposed to do in your view than that? What the judge did in that case, Your Honor, is said by relying on his injunctive order. And this is one I'm unfortunate I have to go back to the standards here. His injunction, unlike the jury charge, his injunction found specific intent. So he – Perhaps we're – I mean, you know, we're – I understand where you're coming from, and I understand you want the entire thing undone. I understand that. You went to the Supreme Court on the merits of the prior decision. I understand Judge Kleinfeld and I disagreed on how that decision should have come out. You asked the Supreme Court to reverse the in-bank decision on the merits. The Supreme Court went to the not uncommon but at the same time somewhat unusual step of asking the Solicitor General for input. The Solicitor General took a long time, provided input, and a brief which fully endorsed the in-bank decision. The Supreme Court denied cert. Now, the odds of this panel going contrary to that, in my view, are fairly slim because of the rule of the mandate. My point with respect to the district courts referencing its prior order is that in his prior order, getting the standards he applied, he made detailed findings about the involvement, the physical acts committed by individual defendants. What more than that was he supposed to do, in your view, in order to determine the appropriate amount of punitive damages? What he should have done that is more is when he looked back to his findings on the injunction, he needed to show how the harms that he was pointing to, the past acts, how they replicate the true threats in this case, how they are not dissimilar, how they're the same sort of activities. What he did was he just pointed back to a laundry list of findings, some of those protected activities. For example, these people signed petitions advancing the view that people who had killed abortionists should be acquitted or that they attended controversial banquets or that they had been involved in sit-ins. None of those activities are similar to the threats here. The only thing he points to is just this laundry list of various activities that are not specific to what they were found guilty of here. When he's looking at the reprehensibility here, the presumption is that compensatory damages makes a person whole, and the only time you get to punitive damages is if these people are so egregious that they have to be deterred and punished. The district judge made the note at the end of his opinion that this was merely an academic exercise. He knew that these defendants can't pay the 500-some-odd thousand in compensatory damages. They sure can't pay 108.5 million of punitive damages. And so more it was just an academic exercise for him. But beyond the academic exercise, he has to show that they deserve to be punished beyond compensatory damages, which made the defendants whole here. Anything, as the plaintiffs argue, about future harms and all these other things, that was never presented as a claim below. That was not even something the judge even considered here. It's what did these people do that is similar to the current threat. And there's nothing in the record to support anything like that. For example, you have Mr. McMillan, and there's a case cited, I think, of the United States v. McMillan, where he makes what's considered a threat. In that case, the district judge fined him $1,000 for contempt but did not impose any face damages, no punitive damages, because he didn't want to interfere with robust debate. Well, if you want to talk about notice to our clients of what they can expect if they violate face, there's no notice that you can be hit with $108.5 million of punitive damages. There's no precedent for this amount. There is notice that you can be hit with punitive damages because face, unlike some other statutes, does not provide for punitive damages and does not provide a cap on punitive damages. So there's notice of exposure. There's notice of exposure. So the question here is really notice of what degree of exposure and what is a sort of neutral or principled basis for making a decision about that. Right. The neutral or principled basis would be that they are so culpable that they deserve to be punished and deterred more than $500,000, more than a lifetime injunction, which if they violate they are facing criminal penalties or other penalties of the court. There's a deterrence right there. And showing that they have been replicating the same type of conduct, which they haven't. All that's being pointed to is other activities that they've been involved with, which is not the similar type of activity involved here, of having a poster that was told to them by the en banc court. It's just the format of this that's the threat. And being involved with names on a website in conjunction with the poster. They had no involvement with the strikeouts because that was done by another person. So looking at the facts as we know them now, what notice is that that you can put a piece of paper and be hit with this amount? Now, with the ratio, the other thing, too, is the ratio analysis. Now it's clear from the Supreme Court that what they've said before is the ratio, once you get to that one to four, you're getting close to unconstitutional aspect or at least in the single digits here. How the district judge lined this up was saying, okay, we take the aggregate amount of compensatory damages and we'll compare it against the individual amounts of punitive damages. Well, if the people were being charged as the whole, which apparently they were, well, then you should look at the aggregate of punitives, aggregate of compensatory. You're well into well over 1 to 200 ratio or in excess of that. However you line this up, the ratios are astronomical. Well, I take it in your view, I mean, I don't know. What do you want us to do? I know what you really want us to do, putting that aside. Your fallback position is what? Send this back again for a recalculation? Or should we remit it? Well, this Court views this as a de novo. What we think is that there shouldn't be any punitive damages here because compensatory damages are enough. Under Leatherman, we could say a number, right? You could say a number, yes, Your Honor. And do you think we should say an aggregate number? Do you think we should say a number for each plaintiff or do you think we should say a number for each defendant? And what do you think those numbers should be if we do decide to say a number? What I think the number should be is that there's no punitive damage and that the $500,000 of compensatory damage, in light of a lifetime injunction, which is the punishment, you have your deterrence, you have your punishment, and you have the defendants being made whole. Assuming there are going to be punitive damages, just assuming, horror of horrors, some amount of punitive damages will remain, okay? What kind of ratios are you thinking about? Let me try to be concrete. Joseph Foreman, he is told to pay PPCW a million dollars in punitive damages. The compensatory were, say, $405,000. Constitutionally, is that an inappropriate ratio? And if so, why? If you're viewing it as him being responsible to plan parented for the $400,000 compared to the $1 million? We're stuck with the $400,000. We're not talking about that, right? And he's hit with a million dollars punitive damages as a result of that. The ratio there would be about one to two. Looks like about two and a half, something like that. Two and a half, 2.4 to be specific. Right. Tell me your squawk about that beyond your general one, that you shouldn't have to pay punitive damages at all. For example, what's wrong with that? What's wrong with that is the $400,000 is the punishment enough. If you want to look at what would be the statutory penalties as a guidepost for the punitive damages, it's one to 100 there, because the statutory penalties are about 10,000, 25,000. You're still in an astronomical range. Now, I understand what the Supreme Court has said as far as ratios, but if the overall idea here is punishment and deterrence, this is beating someone over the head with a brick. Which number did you say it should be? I said, if anything, it should be the statutory penalties of 10,000 to 25,000. And I reserve the rest of my time for rebuttal, if that's okay. Sure. Good morning. May it please the Court. Maria Vullo from Paul Weiss Rifkin Wharton Garrison on behalf of Plaintiffs Appellees. In addressing the punitive damages, which is the subject of the limited remand to the district court, we believe that the punitive damages award, as the district court noted, were reasonable given the high degree of reprehensibility of the defendant's conduct. And I think the district court's statement of defendant's unrelenting, egregious and unapologetic conduct is very critical here when one considers the purposes of punitive damages awards. Counsel, I have some questions about some of the details here. Sure. I have trouble with using the RICO damages as part of the predicate for the punitive damages because Shidler plainly makes the RICO award inappropriate. It may be that the defendants are stuck with the RICO award anyway because our mandate came down before Shidler came down, but there's no question that it's contrary to law under Shidler. Now, punitives was still open after Shidler came down, and it sure seems odd, odd to the point where I suspect it's wrong to award punitive damages on an award on a compensatory amount that's contrary to law, even if it is final. So wouldn't we have to cut punitives in order to cut out the RICO? Your Honor, they're two separate. The jury verdict and the judgment is absolutely separate as to RICO and as to face the compensatory. And we don't even argue about the compensatory damages of RICO impacting the punitive damages award in this case. It's the face compensatory damages, and the chart that we use in our brief is only the face compensatory damages and not the RICO issue, which I'm not going to address given what I understand the views of the panel on. Okay. Now let me ask you a question about whether it should be based on the effect on the defendants or the effect on the plaintiffs in terms of ratio. In the State Farm case where the Supreme Court said that, I think it was Utah in that case, that the Utah Supreme Court had denied due process to the defendants, the Supreme Court said that the courts in Utah awarded punitive damages to punish and deter conduct that bore no relation to the Campbell's harm. That was the plaintiff's. That posed a risk of double punishment and was wrong in numerous other respects, and they said a defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. So why shouldn't we look at ratios, plaintiff by plaintiff, so that if one plaintiff has large compensatories and punitives that are just a single digit multiple of it, that may be okay. But if another plaintiff has small compensatories and punitives that are a very large multiple, way beyond single digits, that may not be okay. Why aren't we bound to do that under State Farm? I don't think State Farm at all addresses the question of aggregating the plaintiff's damages. It doesn't speak to a case just like yours, but the rationale seems inescapable to me. I'm wondering what the escape is. I don't believe so, Your Honor. If I could just explain the rationale for our ratio analysis. Punitive damages, it is clear under all the case law, is intended to punish and deter the defendants, and the constitutional issue that brings us before this Court is a defendant's due process right. So one must look at, I would submit, from the defendant's perspective, the defendant's due process rights in terms of the award that defendant has been hit with. And when you have a joint and several compensatory damages award, the law is clear that each defendant is 100 percent liable for the compensatory damages. So when looking at the ratio analysis, you look at the defendant's responsibility for compensatory damages joint and several. Here is the 526,000. But that's just a civil manipulation. I mean, the jury didn't decide it that way in the first place. We're just manipulating it to say, all right, well, Foreman caused Chris $39,000 worth of damage, and McMillan caused Chris $39,000 worth of damage, and therefore Foreman caused Chris two times $39,000. We can say that, but I don't see the logic of that. The jury said Foreman did damage to Dr. Chris of $39,000. That's what he did. And we think he should pay $750,000 in punitives for having done that. That's what the jury said. I agree, Your Honor. Right. I agree with that. So the jury was told to and carefully said, look, what we're talking about is what did A do to B. I don't quite see why I'm going to want to add in what did C do to B. I'm not doing that, Your Honor, with all due respect. It seems to me you are. Let me explain. Let me explain. The jury in the verdict form said how much each plaintiff was harmed and assessed the compensatory damages as to each plaintiff and awarded the same amount to each plaintiff as against each defendant. That's compensatory damages. I have never said that we should add up all of the plaintiffs and all of the defendants compensatory because we'd get much more than the 526 because of the joint and several award. Are you saying that if Mr. Foreman, for example, pays $39,656 to Dr. Chris, nobody else has to pay him any amount because that's it? Yes, Your Honor. That's what my position has been from the beginning. I have never argued that the compensatory damages are other than joint and several. And under that analysis, I think if I can find, using your example, Mr. Foreman, and Mr. Foreman has $526,000 in assets and I obtain $526,000 and I cannot obtain compensatory damages again, it's up to the defendants to argue contribution from one another. I don't see what the joint and several has to do with the punitive analysis. The joint and several liability is common in all tort cases. And what it means is the plaintiff can recover his entire loss from any one of the defendants. He cannot recover the same loss twice, but he can recover the same loss from any one of the defendants because they all have a joint responsibility for the loss. As for the apportionment, that's among the defendants, and they can sue each other for contribution or indemnity in order to make their shares come out fair. But that's not the plaintiff's problem. So if one defendant gets stuck, one defendant happens to win the lottery and pays the whole $100 million, he can sue all the other defendants for their proper shares under joint and several liability. But I don't see what that has to do with what the allocation should be. Well, if we're looking at we're not allocating punitives, Your Honor. The jury actually very separately. I didn't mean allocating punitives. I misspoke. Because the punitive damages awards absolutely have to be dealt with defendant-by-defendant. What I'm talking about is the ratio analysis on the punitives. Well, I think when we're looking at the ratio analysis. I can't see what joint and several has to do with it. It seems to me that you still have to figure out some way around State Farm, and I didn't really see your way around it except to talk about joint and several that I can't see has anything to do with it. I don't understand, Your Honor, with all respect. I don't think State Farm deals with this question at all. I just read you the language where it does expressly. State Farm did not have more than one plaintiff where there was an issue of joint and several. Well, it didn't have a plaintiff with a green sweater. And maybe one of your plaintiffs has a green sweater, but it doesn't matter. State Farm says that the punitives have to be based on that particular plaintiff's injuries, not what State Farm Insurance Company did to other people. The ratio analysis under State Farm, Your Honor, does ask for the court, and it's an important point that I'd like to get to, to look at the harm to the plaintiffs. And State Farm and the cases preceding it and subsequent to it, including the Exxon Valdez case, made it clear that you look not just to the actual economic harm, you look at non-economic harm, and you look at potential harm as well. We emphasize this in several Ninth Circuit cases. It wasn't just Exxon. It was also Baines where we said that the punitives had to be based on the harm to the corporation that sued, not the individual drivers who didn't sue. They might be able to bring their own lawsuit. I agree, Your Honor. And I think what's important here, the jury was specifically instructed that the only damages that the jury could award were damages that the plaintiffs suffered and that the defendant caused. And they were specifically instructed multiple times that they could not find any liability based upon the actions of others. That was in the incitement instruction. So there's no question in this case that the jury did not find liability, including as to punitive damages, on anything other than the threats that were presented to them. There were multiple instructions on that issue. So in terms of the way I remember the ratios here, you've got some plaintiffs who get punitives that are far more than a single digit multiple of their compensatory damages. Your Honor, we have some plaintiffs. I think if you look at what the jury did, it's actually quite interesting because when you look at the punitive damages awards as to the defendants, the jury divided the defendants into four categories. The two organizational defendants were hit with the largest punitive damages awards. And the individuals, they had three tiers, which reflected very, very well the reprehensibility of the defendants. And the jury was instructed both on reprehensibility and on proportionality. And the awards, when you look at the defendants, you know, Bray, Burnett, Crane, Dodds, Nolan had the $8,000 award. Those were the most culpable defendants in this case if you look at the judge's findings of fact in terms of their participation. And then there's a second tier and a third tier of individual defendants. So this verdict was proportionate. While one might argue, and the defendants are arguing, that it's still excessive, it clearly was a proportionate verdict, and the jury took into account reprehensibility. And I'd like to talk about reprehensibility because the Supreme Court has instructed that it's the highest indicium of the reasonableness of an award is the degree of reprehensibility. And the Supreme Court has identified five factors. Kagan. Mr. White focuses particularly on the recidivism. Yes. Factor, why don't you? Sure. And that's one of the five factors. I understand that. And the recidivism factor, Your Honor, the Supreme Court in State Farm said the actions should be similar to or of the sort that injured the plaintiffs here. And here the recidivism is actually not simply the defendant's prior histories of arrest and anti-abortion activities. There's repeated conduct in this case. What the factor says is the conduct involved repeated actions or was an isolated incident. In this case, we had repeated actions. We had a deadly dozen list, multiple times republished, and that's in the en banc majority's opinion. And it was also distributed 30 or 40 times. We have that in the record. Then you have the crisp poster, another action. You have the Nuremberg files changed over time, multiple times, daily hits on the Web site. So we have repeated actions in this very case that were all considered threats. That's number one. Then you deal with the prior history. And do we have wanted posters in the past? Why are these defendants the exact same things? No, but that's not the limitation of State Farm. The limitation is was it similar to. This conduct of the defendants in prior cases was all intimidation activities to get abortion providers to stop performing abortions. They violated injunctions. They were hit with threats and assault claims. And as the district court said, these are recidivists of the worst order. And why that's very relevant is that, again, coming back to the purposes of deterrence and punishment. When someone is a repeat offender, deterrence and punishment comes into play to ensure that the action doesn't continue. My colleagues on the other side argue that the injunction is enough. The injunction is not enough. It's a very limited injunction. This one is the grouping for me. You can't call a lady who carries a sign at a political rally a recidivist because somebody else who shares her view on the merits of the issue has repeatedly done something bad. I'm not arguing that, Your Honor. And just footnote 13 of our brief, what I'm saying about recidivism, again, is two things. One is repeat action in this case itself, the jury found, and the En Bonne Court has affirmed, repeat actions. But then you also have one convicted of bombing of clinics, another physically assaulting a doctor, threatening clinic employees, violating injunctions. I'm not talking about the whole thing outside. Are you talking about people who share the political ideas or about each of the particular individuals who is liable in this case? I'm talking about each of the defendants, and I list the particular defendants that were recidivists. Every one of the defendants has a previous record of engaging in intimidation tactics against abortion providers, and that's what I'm talking about. And we list them in our brief. That's the recidivism. State Farm, if I may, was dealing with a very different question. It was a federalism question, same as BMW, where you have conduct that may be lawful in another state, and you have a state jury with punitive damages having a large award to perhaps punish for conduct lawful elsewhere. That's not the case. It's a federal statute, and it's not lawful elsewhere. Counsel, I just saw your yellow light going on, and I think you've said what you need to say on State Farm. I have another area of inquiry I want you to address. On the face claim, the plaintiffs won that on the basis of a jury instruction that, if I recall it right, basically told the jury you don't have to find that these defendants actually intended to put the plaintiffs in fear. You just have to find that a defendant would reasonably have known that plaintiffs would be in fear. And we said in our embark that that's right. And then, subsequently, Virginia v. Black came down, and the Supreme Court said, quote, where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. And then they used the phrase, quote, with the intent of placing the victim in fear, close quote. Now, it may be that your award is settled by the mandate, so we don't take another look at it because of Virginia v. Black, your compensatory award. But I'm wondering about whether we can approve punitives that are based on a conception of law that's contrary to Virginia v. Black. Your Honor, it is not contrary to Virginia v. Black at all. Why? Virginia v. Black, as this Court held in the en banc decision, intention to intimidate was part of the statutory requirements under the FACE statute. That's the exact case, actually, as Virginia v. Black in terms of this — well, not the exact in the sense that Virginia v. Black was not a threats statute, but it had an intention to intimidate. And I would submit that's what Justice O'Connor was saying. And I would refer you to what the Solicitor General said in his brief to the U.S. Supreme Court. Virginia v. Black had come down before the petition in this case was denied, and the Solicitor General said that exact same thing. That's in our excerpt, says 174, and that is that, you know, the Court of Appeals' accusal to incorporate into its true threat standard a requirement that the speaker intended to make a threat could not have affected the outcome of this case because of the FACE statute. And that's what the en banc majority held. So I don't think Virginia v. Black, even if it's accepted that it required a subjective intent standard, which I don't believe it is, but I don't think that there's argument here. Going back to — yes, Judge Reimer. Let me ask you the same question I asked Mr. White. In — at least in my view, the ratio is wildly out of whack, particularly if you compare it, plaintiff to defendant, all the way through. But having said that, it's very — it's somewhat difficult to arrive at a non-arbitrary figure. And what is — what is your position with respect to how one should go about it, and what is it that you would ask us to do if we were to say that the ratio is so out of whack as to exceed constitutional limits? Well, I think Cooper Industries instructs two things. One is that this Court has de novo review, but two is that this Court must still district judge here made findings on reprehensibility and on harm and on recidivism. I would think this Court would accept it. If this Court were to — maybe answer your question, Judge Reimer. If this Court were to conclude that the district court's fact findings were correct and no more fact findings were necessary, then I don't think a remand would be appropriate. And quite frankly, this case, litigation needs to come to an end. But I do think that, Your Honor, the proportionality analysis, plaintiff by defendant, is not the correct one. We've set that forth in our brief. But even if you look at it, then you have some plaintiffs that are clearly within, if you even accept a single digit, which I don't believe is what is essential here, because the Supreme Court has said there's no mathematical bright line. And I believe this Court's job is difficult, because there's not a set standard. That's why I'm asking for help. And basically what I'm getting is a punt, which says, you know what, I mean, it's just a difficult thing. I mean, I'm searching for a position that isn't arbitrary. If you take the – if you assume that the ratio is out of whack. So what do you say to do? Remand it and let the district court have another stab? Or do you say this Court should just pick a figure? And if you say pick a figure, do you have any basis for picking a figure that's not arbitrary? Well, Your Honor, I think in terms of whether this Court can do it, I think this Court can pick a figure so long as it does not require factual findings that differ from what the district court did. Okay. So I think that – Okay. I think 9 to 1 or I think 4 to 1? Well, I think if you look at – you could look at a number of cases in this circuit and you have – you know, you have Swinton is 28 to 1. You have – Or State Farm. Right. But you also have – I mean, you have the Zhang case, which was 7 to 1. That was upheld. You have Mathias in the Seventh Circuit, which is even closer, I think, to this case in terms of reprehensibility. And that's 28 – it's definitely a double-digit multiplier. So I think that you can certainly approve of it. What I would suggest, Your Honor, is it still has to be proportionate. The defendants – the jury said that the defendants had different levels of culpability. And I think also you need to consider in the ratio analysis, it's not 5-26. It's much higher than that. We have non-economic harm that cannot be quantified. Okay. I think you've answered the question. Thank you, Your Honor. Mr. White, so – Let me get back to something. We're out of time. Are we out of time? Go ahead. Go ahead. Well, I'll let it pass. Go ahead. I'll give you a bit – another minute to equalize your time. So go ahead.  Thank you, Your Honor. With regard to Judge Kleinfeld's comment, you can't have an intent to intimidate by an unintended threat, which is the situation you have here. These defendants have been punished enough with the injunction, lifetime injunction, there shouldn't be any punitive damages. And if there are punitive damages, the civil penalties that are accorded for and face would be something that would not be arbitrary here. The reason why plaintiff does not want this court to look at the damages by defendant to plaintiff is, for example, with Mr. Foreman. If you look at his ratio with James Newhall, I believe it's 1 to 2,000. That's why they want to reel everything in. With regard to the recidivism, the posters were republished in two editorials, not 30, 40, 50 times. And this is their so-called first offense. So it's not as though they keep repeatedly making threats in the past and they have to now be punished because these people are recidivists of the worst order, as the district court said, without any true findings here. The only person who had any threat background was Mr. McMillan. And as I cited in the case, United States v. McMillan, there was just a $1,000 contempt fine, no face penalties, no nothing in that thing. So if you're looking at this as a whole, the ratios are out of whack. The compensatory damages are punishment enough in light of the injunction, but we still ask this court to use its discretion to bring justice to this case. Thank you, Your Honor. All right. Counsel, thank you both for your argument. The matter just argued will be submitted and the court will stand at recess for today.
judges: Fernandez, Rymer, Kleinfeld